THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRIS DEMARINIS, individually          :
and as guardian of D.D.,               : CIVIL ACTION NO. 3:20-CV-713
                                       : (JUDGE MARIANI)
          Plaintiff,                   :
                                       :
     v.                                :
                                       :
ANTHEM INSURANCE COMPANIES,            :
INC., d/b/a ANTHEM BLUE CROSS          :
AND BLUE SHIELD and ABC                :
CORPORATIONS 1-10,                     :
                                       :
          Defendant.                   :

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff's Motion for an Award of Attorney's Fees and Costs (Doc. 63) is pending

before the Court. Plaintiff moves for an award of attorney's fees and taxable costs pursuant

to 29 U.S.C. § 1132(g)(1), the provision of the Employee Retirement Security Act of 1974

("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, which addresses the award of attorney's fees and

costs. (*Id.* at 1.) Plaintiff claims entitlement to fees and costs based on the Court's partial

grant of summary judgment in his favor. (Doc. 63-1 at 1.) He alternatively seeks attorney's

fees on a contingency basis, the amount of which is "pending" and on an hourly basis

calculated to be $51,704.60. (*Id.* at 12.) Plaintiff also requests an award of taxable costs in

the amount of $2,056.52.63. (*Id.*) Defendant Anthem Insurance Companies, Inc. ("Anthem"

"Defendant") responds that Plaintiff has not demonstrated that he qualifies for an award of

fees and costs under ERISA, an hourly calculation rather than contingency fee is appropriate if he were entitled to fees, and any award should be reduced because Plaintiff achieved only partial success and submitted improper entries for reimbursement. (Doc. 66 at 1.) Plaintiff did not file a reply brief and the time for doing so has passed. Therefore, Plaintiff's Motion is ripe for disposition. For the reasons set forth below, the Court will grant Plaintiff's Motion in part.

## II. BACKGROUND

Plaintiff filed this action on April 30, 2020, claiming violations of ERISA, specifically 29 U.S.C. §§ 1109 and 1132(a)(1)(B). Plaintiff filed the action after Defendant denied coverage for a substantial portion of the cost of his son's treatment at the Kennedy Krieger Institute ("KKI") inpatient Neurobehavioral Unit ("NBU"). (Doc. 1.) At the time the Complaint was filed, D.D., Plaintiff's minor son, was sixteen years old and had a diagnosis of "severe intellectual disability, Autism Spectrum Disorder, Disruptive Behavior Disorder, Obsessive-Compulsive Disorder, seizures, Macrocephaly, and Hypokinetic syndrome." (*Id.* ¶ 13.) With Anthem's approval, D.D. had been admitted to KKI on May 1, 2019, and on May 8, 2019, Defendant denied continuation of coverage. (*Id.* ¶ 34.) Defendant continued to deny coverage through the appeals process. (*Id.* ¶¶ 35-42.)  On July 9, 2019, KKI submitted a request for independent external review. (*Id.* ¶ 43.) On September 3, 2019, the assigned reviewer, Advanced Medical Reviews ("AMR"), issued a letter and Peer Reviewer Final Report upholding Anthem's decision that continued treatment at KKI was not medically

necessary from May 8, 2019, forward. (*Id.* ¶ 50.) Plaintiff requested that the Court require Defendant to cover the cost of D.D.'s treatment at KKI's NBU program from May 8, 2019, to October 24, 2019, in the amount of $459,318 and reimburse Plaintiff for the reasonable attorneys' fees and costs incurred in this action. (Doc. 1 at 11.)

Plaintiff's Motion for Summary Judgment (Doc. 33) was filed on March 24, 2021. Plaintiff sought summary judgment based on the contention that Anthem ignored the opinions of D.D.'s treating physicians and common sense when it determined that D.D.'s treatment at KKI was not medically necessary as of May 8, 2019. (Doc. 38 at 2.) Plaintiff asserted that

> [c]ontrary to Anthem's determination, . . . the medical necessity of D.D.'s treatment at KKI did not end on May 8, 2019.
>
> There is significant evidence in the record from D.D.'s behavioral and medical providers that he continued to require inpatient treatment and benefited from treatment at KKI following Anthem's denial. Premature discharge and interruption in treatment would have placed D.D. and others at risk for injury, and likely would have resulted in re-hospitalization. Further, there is no indication that the experts retained by Anthem and/or its medical directors involved in the appeal process had any expertise in the treatment of severe behavioral dysfunction (notably self-injurious behavior) in children and adolescents with autism and/or intellectual disability. What is certain is that Anthem's experts did not examine D.D. or meet with his parents or medical providers. Accordingly, Anthem's denial of plaintiff's claim should be overturned as it is not supported by substantial evidence, erroneous as a matter of law, not made in good faith and in violation of ERISA.

(Doc. 38 at 2.)

Defendant asserted that summary judgement in its favor was warranted because it properly determined that D.D.'s continued treatment was not medically necessary and denied coverage on this basis. (*See, e.g.,* Doc. 47 at 1.)

On April 10, 2024, the Court issued a Memorandum Opinion (Doc. 61) and Order (Doc. 62) granting Plaintiff's Motion for Summary Judgment (Doc. 33) in part and denying Defendant's Cross Motion for Summary Judgment (Doc. 45). The Court concluded that Plaintiff was entitled to payment of benefits for the period of May 8, 2019, through July 7, 2019, and for evaluation of benefits consistent with the Court's Memorandum Opinion for the period of July 8, 2019, through October 24, 2019, and appropriate payment of benefits for that period. (Doc. 61 at 95.)

Employing the "arbitrary and capricious" standard of review,[1] the Court's decision was based on (1) findings that numerous recognized procedural anomalies suggested that Anthem's decision was arbitrary and capricious; and (2) the lack of substantial evidence to support Anthem's decision that continued care for D.D. was not medically necessary further supported a finding that its determination not to continue coverage was arbitrary and capricious. (Doc. 61 at 39-81.) The anomalies identified included Anthem's reversal of its position, inconsistent treatment of facts, inadequate consideration of opinion evidence,

---

[1] If a plan does not grant discretion to the fiduciary, "then a court reviews an adverse benefit determination *de novo.*" *Noga v. Fulton Fin. Corp. Emp. Benefit Plan*, 19 F.4th 264, 272 (3d Cir. 2021) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). But if a plan does confer discretionary authority on a fiduciary decision-maker, then a court reviews an adverse benefit determination for an abuse of discretion under the arbitrary-and-capricious standard." *Id.* (citing *Firestone*, 489 U.S. at 115; *McCann v. Unum Provident*, 907 F.3d 130, 147 (3d Cir. 2018)). The parties agreed that the arbitrary-and-capricious standard applied in this case. (Doc. 61 at 37.)

4

analysis of all relevant diagnoses, and review independence. (*Id.* at 45-65.) The Court's

substantial evidence determination included findings that Anthem's conclusions that

applicable discharge guidelines had been met were not supported by adequate evidence,

i.e., substantial evidence did not support Anthem's conclusions regarding risk assessment,

absence of thoughts of serious harm, the management of medication effects, and the

satisfaction of treatment goals.  (*Id.* at 71-80.) Based on the finding that Anthem's decision

to terminate benefits was arbitrary and capricious, the Court concluded that the appropriate

remedy was an award of benefits (*id.* at 84) and that remand to the Plan Administrator was

required to determine the amount (*id.* at 92-94). Finally, the Court concluded that Plaintiff's

request for attorney's fees and costs would be denied without prejudice and subject to

consideration upon receipt and briefing of a motion for attorney's fees.

### III. ANALYSIS

Plaintiff claims entitlement to fees and costs based on the Court's partial grant of

summary judgment in his favor, alternatively seeking attorney's fees on a contingency basis,

the amount of which is "pending," and on an hourly basis calculated to be $51,704.60. (Doc.

63-1 at 1, 12.) Defendant responds that Plaintiff has not demonstrated that he qualifies for

an award of fees and costs under ERISA, an hourly calculation rather than contingency fee

is appropriate if he were entitled to fees, and any award should be reduced because Plaintiff

achieved only partial success and submitted improper entries for reimbursement. (Doc. 66

at 1.)

5

A district court has the discretion to award reasonable attorney's fees and costs in an

ERISA action to a claimant who achieves "'some degree of success on the merits'" under 29

U.S.C. § 1132(g)(1). *Hardt v. Reliance Stand. Life Ins. Co.,* 560 U.S. 242, 255 (2010)

(quoting *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 694 (1983)). Thus, whether a claimant

achieved "some degree of success on the merits" is the threshold question in considering a

request for attorney's fees in an ERISA action.

> A claimant does not satisfy that requirement by achieving "trivial success on
> the merits" or a "purely procedural victor[y]," but does satisfy it if the court can
> fairly call the outcome of the litigation some success on the merits without
> conducting a "lengthy inquir[y] into the question whether a particular party's
> success was 'substantial' or occurred on a 'central issue.'"

*Hardt,* 560 U.S. at 255 (quoting *Ruckelshaus*, 463 U.S. at 688 n.9).

Once the threshold question has been answered in the affirmative, several relevant

policy factors guide a court's determination whether to make a discretionary award of fees.

*Ursic v. Bethlehem Mines*, 719 F.2d 670 (3d Cir. 1983), identified five such factors:

(1) the offending parties' culpability or bad faith;

(2) the ability of the offending parties to satisfy an award of attorneys' fees;

(3) the deterrent effect of an award of attorneys' fees against the offending
parties;

(4) the benefit conferred on members of the pension plan as a whole; and

(5) the relative merits of the parties' position.

719 F.2d at 673 (citing *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir.1980); *Iron Workers Local 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir. 1980); *Eaves v. Penn,* 587 F.2d 453, 465 (10th Cir.1978)).

The Supreme Court has noted that, once a court determines that an award of fees is warranted, the lodestar approach is appropriate to calculate the award:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

461 U.S. at 433.

Here, Defendant does not argue that Plaintiff did not achieve some degree of success on the merits of his claim. Rather, Defendant maintains that "the *Ursic* factors demonstrate that Plaintiff is not entitled to attorney's fees or costs under ERISA," (Doc. 66 at 4), and, if the Court allows an award, the Court should narrow the request for fees and limit the award based on only partial success (*id.*).

## A. *Ursic* Factors

## 1. Defendant's Culpability or Bad Faith

Plaintiff asserts that "[t]he degree of Anthem's culpability is high" (Doc. 63-1 at 5) while Defendant maintains that it did not engage in culpable or bad faith conduct (Doc. 66 at 4). The Court concludes that this factor weighs in favor of an award of attorney's fees.

The first *Ursic* factor favors an award to the prevailing party not only in cases involving "bad faith" but in other cases as well. As the district court recognized, bad faith normally connotes an ulterior motive or sinister purpose. *Ford v. Temple Hosp.,* 790 F.2d 342, 347 (3d Cir.1986). A losing party may be culpable, however, without having acted with an ulterior motive. In a civil context, culpable conduct is commonly understood to mean conduct that is "blameable; censurable; ... at fault; involving the breach of a legal duty or the commission of a fault.... Such conduct normally involves something more than simple negligence.... [On the other hand, it] implies that the act or conduct spoken of is reprehensible or wrong, but not that it involves malice or a guilty purpose." *Black's Law Dictionary* (6th ed. 1990). Thus, in *Vintilla v. United States Steel Corp. Plan,* 642 F.Supp. 295, 296–97 (W.D. Pa.1986), *aff'd,* 815 F.2d 697 (3d Cir.1987), *cert. denied,* 484 U.S. 847, 108 S.Ct. 143, 98 L.Ed.2d 100 (1987), for example, the court concluded with respect to the first *Ursic* factor: "While we cannot ascribe bad faith to plaintiffs' efforts, we do find certain elements of culpability attributable to plaintiffs." Indeed, this court in *Groves v. Modified Retirement Plan, Inc.,* 803 F.2d 109 (3d Cir.1986), found an award of counsel fees to be appropriate in an ERISA case without finding that the defendants had acted with an ulterior or sinister purpose.

A party is not culpable merely because it has taken a position that did not prevail in litigation.

*McPherson v. Employees' Pension Plan of Am. Re-Ins. Co.*, 33 F.3d 253, 256–57 (3d Cir. 1994).

The abundant evidentiary support for the Court's determination that Defendant's decision to deny benefits from May 8, 2019, was arbitrary and capricious also provides abundant support for finding that Defendant engaged in culpable conduct. Certainly, Anthem's conduct was "blameable; censurable." *McPherson*, 33 F.3d at 257. The Court found that Anthem was "at fault" in this ERISA action for its denial of benefits. *Id.* The Court has no impediment to concluding that Anthem's conduct was "reprehensible or wrong." *Id.*

Anthem decided that D.D.'s treatment at KKI was not medically necessary as of May 8, 2019, but did not provide any valid support for that position. Rather, the Court found that

> Anthem's three denial letters indicate that the requests for continued care were denied based on the assertions that D.D. went to the hospital because he was at a high risk for harm, Anthem had information showing that D.D. had improved, D.D. was not at risk or high risk for harming himself, and he could be safely treated outside of a hospital. *See supra*. Anthem did not provide any details or citation to medical records; no basis for the assessed improvement is proffered nor is there support for the risk assessment. In other words, Anthem provides no support for its conclusion that D.D. was no longer at risk for harming himself. Most importantly, . . . the notes of both medical reviewers contradict the conclusions stated [elsewhere] in their own notes and Anthem's letters.

(Doc. 61 at 52-53.)

Similarly, regarding Defendant's final decision authored by Advanced Medical Review, the Court identified contradictory findings and concluded that the reviewer's decision that D.D.'s treatment at KKI was no longer medically necessary as of May 8, 2019, was not supported by sufficient evidence. (Doc. 61 at 56-57.)

The Court further found that this was a case where Defendant was required to articulate its thought process for crediting non-treating doctors' opinions over those of treating doctors because the non-treating doctors' opinions did not constitute reliable evidence.

> Anthem relied solely on the paper reviews of its non-treating physicians, Dr. Allen and Dr. Soliman, without articulating its thought process for doing so. The record shows that the reviews provided by these doctors were cursory and internally contradictory, *see supra* pp. 10-17, 50, 52-53, whereas [treating physicians] Dr. Tierney and Dr. Schmidt provided detailed analysis of D.D.'s problems, treatment, progress, and prognosis in support of their opinion that

9

> D.D.'s ongoing care on the NBU was medically necessary in both their Voluntary Second Level of Appeal letter dated May 31, 2019, (AR 222-26) and their request for Independent External Review letter dated July 9, 2019, (AR 397-404).
>
> Notably, as discussed above, in contrast to the rationales for denial stated in Anthem's letters, outside of their conclusory comments, neither Dr. Allen nor Dr. Soliman substantively assessed that D.D. had improved since his admission to KKI. *See supra pp.* 50-53. In fact, Dr. Soliman's review specifically stated "Pt show *no changes*. He remains impulsive and aggressive." (AR 778 (emphasis added).) Given these findings, the Court cannot conclude that the opinions provided by Dr. Allen and Dr. Soliman constitute "reliable evidence" upon which Anthem could rely without the need for explanation. *See* [*Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)].

(Doc. 61 at 59-60.) Because Defendant did not credit reliable evidence in making its medical necessity determination, Defendant should have articulated its thought process for crediting non-treating doctors' opinions over treating doctors' opinions. (*Id.* at 60-61.) Defendant's failure to do so is further culpable conduct.

Another illustration of Defendant's culpable conduct is Defendant's determination in support of its denial of continued care that D.D. met all relevant MCG (Milliman Care Guidelines) B-902-IP discharge criteria and the lack of substantial evidence supporting that reliance. (*See id.* at 66-73.)

The foregoing examples of Defendant's culpable conduct indicate that this factor weighs in favor of an award of attorney's fees. Defendant's arguments to the contrary are unavailing.

Defendant relies on a District of New Jersey case where the court

10

found that the facts in that case did not indicate "culpability" since the plan "attempted to align its decision making with the dictates of medical science and legal precedent[,]" with the court concluding that "while Defendant's position was 'ultimately unpersuasive, it cannot be said that' it 'was entirely devoid of merit.'"

(Doc. 66 at 6 (quoting *Molders v. New Jersey Education Association Pruprotect Plus Plan*,

Civ. A. No. 05-1747 (AET), 2006 WL 8457913, at *2 (D.N.J. Oct. 13, 2006) (quoting *Wal-*

*Mart Stores, Inc Assocs.' Health and Welfare Plan v. Bond*, Civ. A. No. 96-522, 1997 WL

255527, at *4 (E.D. Pa. May 8, 1997))).) Analogizing this case with *Molders*, Defendant

states that its

denials here were made in good faith, based upon "dictates of medical science and legal precedent" and were not "wholly devoid of merit[.]" *Molders*, 2006 [WL 8457913, at *2]; Opinion at 17-18 (discussing medical director's consideration of the relevant medical records and statements regarding his clinical findings and rationale in support of Anthem's denial). D.D. was a medically complex patient, and in light of Anthem's review of the medical records and applicable clinical criteria, Anthem determined some but not all of the dates of service were medically necessary under the terms of the Plaintiff's health benefits plan. See Opinion at 9 (discussing D.D.'s numerous unique symptoms on admission and admission goals). This complexity is reflected in the Court's own in-depth analysis as it weighed (i) the relevant MCG criteria applied by Anthem; (ii) the risk assessment prepared by Anthem's reviewer; (iii) the management of D.D.'s medications; and (iv) whether D.D.'s treatment goals were met. Opinion at 71-81. This is precisely the type of case where granting an award of fees and costs would not align with precedent.

(Doc. 66 at 7.)

A review of the Court's Memorandum Opinion readily discounts Defendant's

analogy. The Court did not suggest that Defendant's denials were made in "good faith,

based on dictates of medical science and legal precedent" (*id.*). To the contrary, as outlined

above, the Court found that Defendant's decision was **not** based on reliable evidence, that the notes and conclusions of reviewing physicians upon which Defendant relied for its early decisions were contradictory and did not provide sufficient evidence to support the denials, that the AMR reviewer's decision was not supported by substantial evidence, and that the relevant MCG B-902-IP Discharge Guidelines were not properly considered. *See supra*. To the extent Defendant points to the complexity of this case to support its claim that it acted in good faith and in accordance with medical science and legal precedent (Doc. 66 at 7), in each instance cited, Defendant failed to properly apply medical criteria and/or legal precedent: 1) Anthem did not properly consider the relevant MCG B-902-IP Discharge Guidelines (Doc. 61 at 66-81); 2) the risk assessment prepared by Anthem's reviewer was not supported by substantial evidence (*id.* at 74-77); 3) the management of D.D.'s medications was not properly assessed (*id.* at 77-79); and 4) substantial evidence did not support Defendant's conclusion that D.D.'s treatment goals were met (*id.* at 79-81).

## 2. Ability to Satisfy Fee Award

Plaintiff asserts that the second *Ursic* factor weighs in favor of an award of attorney's fees given that "Anthem is well-situated to satisfy a reasonable award of attorney's fees because it is a national insurance provider that operates throughout the United States." (Doc. 63-1 at 5.) Defendant responds that "Plaintiff has not cited any evidence to support his claim that Anthem is financially able to satisfy an award of attorney's fees and costs. Plaintiff simply 'submits' that Anthem is a 'national insurer.' Given the lack of evidence, this factor

should weigh against Plaintiff or, at most, constitute a neutral factor." (Doc. 66 at 10 (citation omitted).)

In *Ellison v. Shenango Inc. Pension Bd.*, 956 F.2d 1268 (3d Cir. 1992), the Circuit Courted noted that, "[s]ince Shenango does not dispute the sufficiency of the Plan's assets to cover an award of fees in this case, the district court should have resolved the second *Ursic* factor in favor of an award of fees to Ellison." *Id.* at 1277 (citation omitted).

Here, Defendant does not contest Plailntiff's assertion or dispute its ability to pay, it merely criticizes Plaintiff's lack of specific evidence to support his assertion that Defendant is able to pay. (*See* Doc. 66 at 10.) Pursuant to the standard set out in *Ellison*, the Court concludes that this factor weighs in favor of an award of fees.

### 3. The Deterrent Effect of an Award of Attorney's Fees

Plaintiff maintains that "an award of attorney's fees to Plaintiff will have a valuable deterrent effect. Such an award will deter insurance companies from denying claims without proper review and justification." (Doc. 63-1 at 6.) Plaintiff adds that "[i]n the absence of attorney's fee liability, a non-prevailing insurer would have little to lose but the amount of damages it would have paid without litigation." (*Id*.) Defendant responds that "an award of attorney's fees and costs in this case would not have a deterrent effect. For an award of attorney's fees and costs to have any deterrent effect, the administrator must have been knowingly engaged in conduct that was culpable such that an award would deter future conduct." (Doc. 66 at 8 (citation omitted).)

*McPherson* addressed the deterrence factor in the context of the District Court's consideration of this factor only in terms of whether the defendant acted in bad faith and stated "[w]e believe it will further the objectives of ERISA if fee awards are employed to deter behavior that falls short of bad faith conduct." 33 F.3d at 258. *McPherson* approvingly quoted *Kann v. Keystone Resources, Inc. Profit Sharing Plan*, 575 F. Supp. 1084 (W.D. Pa. 1983): "in [a] case in which 'culpability . . . has been shown,' [a] fee award will make [the] plan 'less likely and not so quick to deny benefits to other participants' and thus be 'a deterrent factor.'" 33 F.3d at 258 (quoting *Kann*, 575 F. Supp. at 1096-97).)

This is a case where culpability has been shown. *See supra*. Therefore, the Court concludes this factor weighs in favor of an award of attorney's fees.

## 4. Benefit Conferred on Members of the Plan as a Whole

Plaintiff contends that the fourth *Ursic* factor weighs in his favor because

> [t]his action and resulting Order and Opinion may benefit other plan participants because Anthem is on notice that its review policies should assure that future claims are given adequate and fair consideration at all levels of appeal. . . . Anthem, and other insurers, may be encouraged to properly consider and pay meritorious claims, as opposed to engaging in litigation.

(Doc. 63-1 at 6.) Defendant responds that

> Any theoretical benefit conferred on members of the Plaintiff's health benefit plan because of this case is speculative at best because the Plaintiff did not bring this action on behalf of other plan participants, and the Court's ruling did not resolve a significant issue under ERISA. As a result, this judgment is unlikely to benefit others and Plaintiff fails to satisfy this factor.

(Doc. 66 at 9.)

The Court concludes that this factor is neutral. Plaintiff's argument concerning the benefits conferred is essentially a deterrence argument and, therefore, was addressed in the context of the third *Ursic* factor. *See Patrick v. Reliance Standard Life Ins. Co.*, Civ. A. No. 19-2106-CFC, 2021 WL 6335082, at *2 (D. Del. Dec. 17, 2021) (fourth factor neutral where the decision in the plaintiff's favor did not confer a positive immediate benefit on other plan members and is same as deterrence); *see also Haisley v. Sedgwick Claims Management Services Inc.*, Civ. A. No. 08-1463, 2011 WL 4565494, at *6 (W.D. Pa. Sept. 29, 2011) (fourth factor neutral where only the plaintiff benefits directly from fee award and plan members benefit only indirectly by deterring other arbitrary and capricious conduct by defendants and, as such, was already considered in the third factor).

**5. Relative Merits of the Parties' Position**

As to the fifth factor, Plaintiff avers that he "clearly had a more meritorious legal position that that of Anthem" in this action. (Doc. 63-1 at 6-7.) Defendant does not argue otherwise. Therefore, this factor weighs in favor of an award of fees.

Having found that four of the five *Ursic* factors weigh in favor of an award of attorney's fees, the Court finds that an award of fees is appropriate in this case. Thus, the Court will now turn to the calculation of the fee award.

**B. Fee Award Calculation**

Plaintiff first argues for a contingent fee award of 25% of the total award. (*See* Doc. 63-1 at 11.) Based on the Court's remand to the Plan Administrator for a calculation and

15

payment of fees, Plaintiff asserts that "a calculation of the contingent fee amount is still pending." (Doc. 63-1 at 11-12.) Plaintiff has not provided an update regarding the contingent fee amount since the filing of his April 30, 2024, brief in support of his motion for fees and costs. Because *Hensley* identifies the lodestar method as the "starting point" for ascertaining reasonable fees and because the Court has no substantive information regarding the contingent fee amount in this case, the Court will consider an award of fees under the lodestar method.

In response to Plaintiff's assertion that fees and costs are reasonable (Doc. 63-1 at 10-15), Defendant does not challenge the hourly rate charged but contends that the fees requested should be reduced based on Plaintiff's limited success and, in many instances, the hours were inappropriately charged or insufficiently supported (Doc. 66 at 1). Plaintiff did not file a reply brief and, therefore, has not refuted Defendant's arguments for a reduction in the fee award requested.

"Where an opposing party lodges a sufficiently specific objection to an aspect of a fee award, the burden is on the party requesting the fees to justify the size of its award." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 713 (3d Cir. 2005), *as amended* (Nov. 10, 2005). However, the party objecting to the fee award requested

> "cannot merely allege in general terms that the time spent was excessive. In
> order to be sufficient, the briefs or answers challenging the fee request must
> be clear in two respects. First, they must generally identify the type of work
> being challenged, and second, they must specifically state the adverse party's
> grounds for contending that the hours claimed in that area are unreasonable.

16

> The briefs must be specific and clear enough that the fee applicants have a fair chance to respond and defend their request."

426 F.3d at 713 (quoting *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d

Cir. 1989)).

## 1. Reduction Based on Degree of Success

Defendant maintains that because Plaintiff sought benefits for all of D.D.'s 169 days

of hospitalization at KKI and the Court did not rule on the propriety of Defendant's denial of

benefits for 101 of those days, the award of fees and costs should be reduced

proportionately. (Doc. 66 at 14.) Defendant posits that

> [o]nce a lodestar calculation has been reached, a court may then reduce that amount to account for 'limited success' by a plaintiff, focusing on 'the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'" *McCutcheon v. America's Servicing Co.*, 560 F.3d 143, 151 (3d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435- 36, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)); *Murphy v. Smith*, 583 U.S. 220, 241, 138 S. Ct. 784, 797 (2018)).

(Doc. 66 at 14-15.) Defendant calculates that Plaintiff would be entitled to 36% of the fees

and costs requested based on his award of benefits for 61 of the 169 days. (*Id.* at 15.)

In support of its argument that reduction is warranted based on "limited success" by

Plaintiff, Defendant does not cite any ERISA case. Because the award of fees in an ERISA

case is based a claimant's achievement of "some degree of success on the merits," *Hardt.,*

560 U.S. at 255 (2010) (internal quotation omitted), the Court declines to adopt Defendant's

position on the proportionate reduction of fees.[2]  The Court's conclusion above that Plaintiff

had achieved some success on the merits is based on both the definitive determination that

Plaintiff was entitled the payment of benefits for the period of May 8, 2019, through July 7,

2019, and for evaluation of benefits consistent with the Court's April 10, 2024, Memorandum

Opinion for the period of July 8, 2019, through October 24, 2019, and appropriate payment

of benefits for that period. *See supra* p. 4 (citing Doc. 61 at 95; *see also* Doc. 61 at 93

("evidence indicates that D.D. was entitled to coverage for *some* period beyond July 7,

2019"). Thus, Plaintiff did achieve "some degree of success on the merits" of his claim for

reimbursement for the entire period of D.D.'s hospitalization. Further, though not necessary

to the finding of "some degree of success on the merits," the Court can readily conclude that

Plaintiff's success was "substantial" and occurred on a "central issue." *Hardt*, 560 U.S. at

225.  For the foregoing reasons, the Court will not reduce the requested lodestar amount of

$51,704.60 based on the degree of success achieved by Plaintiff.

## 2. Reduction in Hours

Defendant identifies four categories of time entries that should be deducted from any

award: 1) vague time entries (Doc. 66 at 15); 2) entries for "internal collaborations" (*id.* at

17); 3) "block-billed" entries (*id.* at 18); and 4) entries for "costs of local counsel, fees for

communicating with local counsel, and fees for researching local rules or related issues"

---

[2] In *Haisley v. Sedgwick Claims Management Services, Inc.*, Civ. A. No. 08-1463, 2011 WL
4565494, at *1 (W.D. Pa. Sept. 29, 2011), the District Court concluded that the plaintiff was entitled to an
award of benefits for a certain period and remanded for a determination of whether the plaintiff was entitled
to an award for a later period. *Id.* The Court did not reduce the fee and cost award based on proportionate
success.

(*id.*). Defendant does not discuss specific time entries in its brief but sets out the categorical basis for each entry to which it objects in Exhibit B attached to its brief. (*See* Doc. 66-1 at 15-16.)

Before addressing Defendant's objections to numerous time entries based on the listed categories, the Court notes that Defendant "generally identif[ied] the type of work being challenged[ ] and . . . specifically [its] grounds for contending that the hours claimed in that area are unreasonable." *Interfaith*, 426 F.3d at 713. Defendant's objections to time entries are "specific and clear enough" that Plaintiff had a "fair chance to respond and defend [his] request." *Id.* Although Plaintiff did not file a reply brief and, therefore, did not counter Defendant's specific objections discussed below, the Court reviews the record to ascertain the validity of Defendant's objections, i.e., whether, contrary to Defendant's objections, Plaintiff provided adequate information in the description of the billing entry to justify the fees challenged.

In *Washington v. Philadelphia Cnty. Ct. of Common Pleas*, 89 F.3d 1031 (3d Cir. 1996), the Third Circuit recognized that "[i]t is an established proposition of law that '[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly.'" 89 F.3d at 1037 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433, (1983)). *Washington* then addressed the question of what constitutes adequate documentation. *Id.*

> [I]n *Rode v. Dellarciprete,* 892 F.2d 1177 (3d Cir.1990)[,] [w]e explained that specificity should only be required to the extent necessary for the district court "to determine if the hours claimed are unreasonable for the work performed." *Id.* at 1190 (citing *Pawlak v. Greenawalt,* 713 F.2d 972, 978 (3d Cir.1983),

*cert. denied sub nom. International Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Pawlak,* 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 172 (1984)). Specifically,

> a fee petition should include "some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates." However, "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney."

*Rode,* 892 F.2d at 1190 (citing *Lindy Bros. Builders, Inc. of Philadelphia,* 487 F.2d at 167).

*Washington*, 89 F.3d at 1037-38.

*Tenafly Eruv Ass'n v. Borough of Tenafly*, 195 F. App'x 93 (3d Cir. 2006), provides

additional guidance as to the specificity required in a fee petition.

> [D]ocumentation requirements for time charged are not exacting: "a fee petition should include some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, ... [but] it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." [*Washington*, 89 F.3d] at 1037–38 (internal quotation marks omitted). While it is advisable in certain circumstances to provide greater specificity [in some instances], we believe . . . entries [such as] "Attn to brief," "Attn to reply," *etc.* [ ] . . are sufficiently clear to allow us to know the tasks to which [the attorney] devoted his time, and we therefore conclude they are documented properly. We note two exceptions below in our itemized list of reductions of the requested fees.
>
> . . . .
>
> Although . . . entries noting . . . "att[entio]n" to various matters are mostly sufficient to satisfy our documentation requirements, . . . [an] entry for "attn to papers" and a[n] entry for "attn to status" do not provide any indication

to what "papers" or "status" [the attorney] was attending. We believe these entries are not sufficiently precise to "determine if the hours claimed are unreasonable for the work performed," *Washington,* 89 F.3d at 1037 (internal quotation marks omitted). . . .

A similar problem arises with . . . entries . . . for "e-mails" and . . . for "conference call[.]" [They] are not specific enough for us to know the subject of [the] actions. . . .

. . . .

[Other] entries too vague to allow us to determine the nature of [the] work [are] an . . . entry for "correspondence" and a[n] entry for "review papers."

*Tenafly*, 195 F. App'x at 100.

Defendant alleges that numerous time entries submitted by Plaintiff are not sufficiently specific or are otherwise not compensable. (Doc. 66 at 20-24.) Supporting documents submitted by Defendant identify ninety-two entries to which it objects and calculate the value of the disputed time to be $14,849.00. (Def.'s Ex. B, Doc. 66-1 at 7, 15-16.) All but one entry identifies vagueness as an objection; twenty-three entries identify vaguenss as the only objection; sixty-eight entries idenify some combination of "vague," "block-billed," "internal collaboration," and "local counsel/unnecessary"; and one entry identifies only "block-billed" as an objection. (*Id.* at 15-16.)

**a. Vagueness Objections**

The Court's review of the twenty-three entries to which Defendant objects only on the basis of vagueness indicates all but three of the entries fall into categories prohibited in *Tenafly.* (*Id.*) The December 18, 2019, entry for "Review of correspondence, Settlement

Denial HR" (.10 hours/$30.50) (Doc. 66-1 at 15) provides definite information as to the

activity in which the attorney was engaged. The April 20, 2021, entry for "Review of

Documents Order" (.10 hours/$33.00) (Doc. 66-1 at 16) is sufficient because it refers to the

review of an order which corresponds with Orders issued by the Court, i.e., the April 19,

2021, Order regarding the summary judgment briefing schedule (Doc. 40) and/or the April

20, 2021, Order granting Defendant's motion to extend the page limitation in its summary

judgment supporting brief (Doc. 41). The May 18, 2021, entry for "Review pleadings" (2.5

hours/$1375.50) (Doc. 66-1 at 15) is "sufficiently clear to allow [the Court] to know the tasks

to which [the attorney] devoted his time," *Tenafly*, 195 F. App'x at 100, particularly in that

the pleadings review took place during the briefing period for the cross-motions for summary

judgment.

      The value of the disputed time for the remaining twenty entries to which Defendant

appropriately objects on vagueness grounds alone is $3,793.50.[3] Therefore, Plaintiff's fee

request will be reduced by this amount.

## b. Remaining Entries

      With one exception, Defendant objects to the remaining entries on multiple grounds,

i.e., some combination of "vague," "internal collaboration," "block-billed," and "local

counsel/unnecessary" grounds. The Court will first address the fifty-nine entries to which

Defendant objects based in part on "internal collaboration," fifty-five of which are objected to

---

[3] This figure is calculated from the identified amount billed for each of the twenty entries in the
Table set out in Defendant's Exhibit 5. (Doc. 66-1 at 15-16.).

as "Vague; internal collaboration" and four which add other grounds to the "Vague; internal collaboration" rationale. (*See* Doc. 66-1 at 15-16.) Thereafter, the Court will assess the merits of Defendant's "local counsel/unnecessary" and "block-billed" objections.

### i. Internal Collaboration Objections

Defendant argues that "Counsel's dozens of entries for 'internal collaboration' between lawyers of the same firm should be deducted from any award." (Doc. 66 at 17.) Defendant further argues that "[t]hese entries are not specific enough because, despite their inclusion of the perfunctory phrase 're strategy,' there is no basis for the Court to determine for what purposes or aspects of the case counsel was conferring or whether the time spent was appropriate for those purposes." (*Id.* (citing *Tenafly*, 195 F. App'x at 100-101).) Defendant also cites several district court cases in support of its assertion that the entries for internal collaboration should be deducted or reduced. (Doc. 66 at 17 & n.4 (citing *Jama Corp. v. Gupta*, Civ. A. Nos. 3:99-CV-01624 and 3:99-CV-1574, 2008 WL 108671 (M.D. Pa. Jan. 4, 2008); *Bluebeard's Castle, Inc. v. Hodge*, Civ. A. No. 2002-154, 2009 WL 891896 (D.V.I. April 1, 2009); *Haisley v. Sedgwick Claims Management Services, Inc.*, Civ. A. No. 08-1463, 2011 WL 4565494 (W.D. Pa. Sept. 29, 2011)).)

Focusing on the guidance set out in *Tenafly*, a review of the panel's opinion indicates that time spent on internal collaboration was not deducted. 195 F. App'x at 99 Rather, the defendants' challenge to "the time (about 140 hours) spent collectively by the attorneys on meetings and conference calls" was determined to be unfounded or unpersuasive, the

Circuit panel noting that the defendants did not explain why the consultation time was unreasonable given the complexity of the case and the many parties involved. *Id.* District courts have recognized that conferences between lawyers working together on a case are expected to occur and are compensable. *United Food and Commercial Workers v. Super Fresh Food Markets*, *Inc.*, Civ. A. No. 04-1226(RMB), 2009 WL 2517064, at *3 (D.N.J. Aug. 14, 2009). In *Haisley*, the court cited *United Food* and, after conclusorily determining that "time spent on internal communications was excessive," the court reduced the hours by fifty percent. 2011 WL 4565494, at *17.

Here, Defendant acknowledges the complexity of D.D.'s "medical issues and circumstances surrounding Anthem's benefits determinations." (Doc. 66 at 2.) In his Declaration, Plaintiff's attorney Alan C. Millstein ("ACM") stated that he was assisted in this matter by his associate, attorney Leily Schoenhaus ("LS"). (Doc. 63-2 at 2.) Defendant objected to fifty-five entries related to the collaboration between Ms. Schoenhaus and Mr. Millstein, identifying them as "Vague; internal collaboration." (Doc. 66 at 22.)

The Court disagrees that the value of these entries should be deducted. Over a period of approximately three and a half years the collaboration between Ms. Schoenhaus and Mr. Millstein set forth in these entries amounted to less than $3,500.00 in fees in compensation for approximately 7.2 hours of work. (Doc. 66-1 at 15-16.) Considered in light of the guidance provided in *Tenafly* and *United Food*, the Court concludes that this time and expenditure for collaboration is reasonable given the circumstances of this case. The Court

further concludes that the Court's recognition of internal collaboration as a valid basis for compensation negates the vagueness objection accompanying the "internal collaboration" objection. Thus, the value of fifty-five entries with the identified objection "Vague; internal collaboration" will not be deducted from Plaintiff's requested fee award.

The remaining four entries to which Defendant objects in part based on "vague" and "internal collaboration" objections are not objectionable based on "internal collaboration," but these entries identify additional grounds, i.e., "local counsel/unnecessary" and/or "block-billed." (*See* Doc. 66-1 at 15-16.) Whether the entries should be disallowed because of involvement of local counsel or block billing raise different issues which will be addressed below.

### ii. Local Counsel Objections

In objecting to fees related to local counsel activities, Defendant asserts that "costs of local counsel, fees for communicating with local counsel, and fees for researching local rules or related issues—except for the initial filing fee—should be deducted or reduced. Costs of local counsel and fees for communications with such counsel were unnecessary." (Doc. 66 at 18 (citing *Interfaith*, 426 F.3d at 710).) In support of this assertion Defendant relies on *Interfaith's* statement that "'under normal circumstances, a party that hires counsel from outside the forum of the litigation may not be compensated for . . . the costs of local counsel.'" (Doc. 66 at 19 (quoting *Interfaith*, 426 F.3d at 710).)

A review of *Interfaith's* guidance regarding local counsel indicates that the Circuit

Court did not address communication with local counsel. Rather, under the heading "Travel

Time and Costs of Local Counsel," *Interfaith* addressed the defendant's challenge to the

District Court's decision to award the plaintiff fees for its costs of travel and travel time

related to local counsel, as well as fees for its local counsel. 426 F.3d at 710. In the context

of this issue, the Circuit Court made the statement quoted above which reads in full:

> We agree that, under normal circumstances, a party that hires counsel from
> outside the forum of the litigation may not be compensated for travel time,
> travel costs, or the costs of local counsel. However, where forum counsel are
> unwilling to represent the plaintiff, such costs are compensable. Therefore,
> because we have affirmed the District Court's conclusion that forum counsel
> were unwilling to represent ICO in this action, we affirm the District Court's
> decision to award compensation for travel time, travel costs, and the costs of
> local counsel.

*Id.*

Viewing *Interfaith* in the proper context, it does not stand for the proposition that

communication with local counsel is not compensable. This determination is bolstered by

the District of New Jersey's consideration of *Interfaith* in *Pretlow v. Cumberland County Bd.*

*of Social Services*, Civ. A. No. 04-2785 (FLW), 2005 WL 3500028 (D.N.J. Dec. 20, 2005),

where the District Court relied on *Interfaith* to deny travel costs and costs for filing fees,

transcripts and travel expenses related to local counsel but did not otherwise limit

reimbursement for work related to local counsel. 2005 WL 3500028, at *9 (citing *Interfaith*,

426 F.3d at 710).

The Court concludes that Defendant's reliance on *Interfaith* is overly broad: the case does not support Defendant's proposition that "costs of local counsel, fees for communicating with local counsel, and fees for researching local rules or related issues— except for the initial filing fee—should be deducted or reduced. Costs of local counsel and fees for communications with such counsel were unnecessary" (Doc. 66 at 18 (citing *Interfaith*, 426 F.3d at 710)).

Defendant objects to the March 17, 2020, entry for LS "Internal Collaboration re strategy with local counsel" and the April 16, 2020, entry for LS described as "Internal collaboration re strategy emails with ACM and Local Counsel" on the following bases: "Vague; internal collaboration; local counsel/unnecessary." (Doc. 66-1 at 15-16.) Given that these two entries are not related to travel or costs of local counsel, they are not barred by *Interfaith*. As set out above, time related to "internal collaboration" is acceptable and entries related to internal collaboration are not objectionable on vagueness grounds. Therefore, Defendant has not shown that the March 17, 2020, and April 16, 2020, entries for LS should be deleted based on "Vague; internal collaboration; local counsel/unnecessary" grounds (*see* Doc. 66-1 at 15-16).

Defendant objects to seven entries as "Vague; local counsel/unnecessary," all of which are for phone calls, correspondence, and/or emails with local counsel. (See Doc. 66-1 at 15-16.) These entries do not identify a purpose for the calls, correspondence, and/or emails. Therefore, they lack the specificity required by *Tenafly* and the value of the seven

entries will be deducted from Plaintiff's fee request. This conclusion results in the following

deductions: 1) November 18, 2019, entry for $30.50; 2) December 16, 2019, entry for

$91.50; 3) December 30, 2019, entry for $30.50; 4) a second December 30, 2019, entry for

$30.50; 5) January 15, 2020, entry for $30.50; 6) January 21, 2020, entry for $30.50; and 7)

February 25, 2020, entry for $65.00. (*See* Doc. 66-1 at 15.)  This results in a deduction of

$309.00 from Plaintiff's requested fee award.

### iii. Block-Billed Objections

Defendant posits that "block-billed entries should not be recoverable because it is

not possible to determine how much time was spent on each separate task and thereby

assess the fee's reasonableness." (Doc. 66 at 18 (citing *Arlington Industries, Inc. v.*

*Bridgeport Fittings, Inc*., Civ. A. No. 3:02-CV-0134, 2016 WL 3522964 (M.D. Pa. June 28,

2016); *Estate of Schultz v. Potter*, Civ. A. No. 05-1169, 2010 WL 883710 (Mar. 5, 2010)).)

Based on these cases, Defendant asserts that courts have "deducted or reduced block

billing that prevented the court from assessing the time billed to a particular task and

reasonableness . . . [and] disallow[ed] all block-billed time entries where some tasks in each

entry could have been delegated to non-professional assistants."  (Doc. 66 at 18.)

Defendant concludes that "[t]his Court should not allow fees for such block-billed entries,"

but does not specifically argue why the entries to which it objects on a "block-billed" basis

should be disallowed. (*Id*.)

"Block billing refers to the practice of grouping several tasks together into a single

time entry, without specifying the amount of time spent on each particular task." *Arlington*,

2016 WL 3522964, at *8 (citing *Simring* v. Rutgers, 634 F. App'x 853, 859 (3d Cir. 2015)).

After noting that the court did "not reject block billing as a time-keeping method," *Arlington*

explained that

> [a]lthough block billing "makes it more difficult for courts to review hours
> expended because we do not know how many hours a lawyer spent on a
> discrete task," engaging in the practice is not ***per se*** unreasonable. *Simring*,
> 634 Fed. Appx. at 859. Block billing "will be upheld as reasonable as long as
> the listed activities reasonably correspond to the number of hours billed." *See*
> *Schlier v. Rice*, No. 3:04-cv-1863, 2009 WL 5182164, at *6 (M.D. Pa. Dec. 22,
> 2009) ("[B]lock billing is a common practice which itself saves time"); *see also*
> *Rode*, 892 F.2d at 1190 (explaining that specificity should only be required to
> the extent necessary for a court "to determine if the hours claimed are
> unreasonable for the work performed"); *United States v. NCH Corp.*, Nos. 98-
> 5268, 05-881, 2010 WL 3703756, at *4 (D.N.J. Sept. 10, 2010) (noting that
> block billing will be upheld as long as "the listed activities reasonably
> correspond to the number of hours billed").

*Arlington*, 2016 WL 3522964, at *8.

To the extent Defendant's position is that fees for block-billed entries in this case

should be categorically deducted (*see* Doc. 66 at 18), the foregoing overview of how courts

consider block-billed entries requires more individualized consideration.

Turning now to entries to which Defendant objects on multiple grounds including

block billing, the Court will first address Plaintiff's April 16, 2020, entry for ACM described as

"Internal collaboration re strategy. Emails with LS and local counsel" to which Defendant

objects on the following bases: "Vague; internal collaboration; block-billed; local

counsel/unnecessary." (Doc. 66-1 at 15.)  For reasons discussed above, the "internal

collaboration" and "local counsel/ unnecessary" objections are without merit. Thus, the

Court will assess whether the entry is objectionable based on block billing or vagueness.

Although time spent on generic emails is not compensable and would be disallowed for vagueness, *see supra*, the April 16, 2020, entry for ACM billing $181.50 for .30 hours is reasonable when viewed in conjunction with the April 16, 2020, LS entry. First, it is reasonable to conclude that the internal collaboration and emails described in the two entries were related: the period separating "strategy" and "Emails" in the ACM entry is absent in the LS entry which reads "Internal collaboration re strategy emails with ACM and Local Counsel." (Doc. 66-1 at 15-16.) Assessing both entries to be for emails to local counsel and co-counsel regarding strategy, the Court will not disallow the ACM entry based on vagueness or block billing.

The October 28, 2020, entry for "Review Joint Case Management Report, Internal Collaboration with LS" (.30 hours/$181.50) to which Defendant objects on "Vague; internal collaboration; block-billed" grounds (Doc. 66-1 at 16) is not disallowed based on block billing or any other basis. The entry is compensable because both activities described are individually compensable and the total time spent for review of the Joint Case Management Report and internal collaboration is reasonable. Further, the specific identification of activities negates the vagueness objection.

Defendant's objections to three additional entries include a "block-billed" objection: two March 20, 2020, entries for 3.5 hours/$1,872.50 each described as "Review documents and Amended Complaint" which Defendant objects to as "Vague; block-billed"; and a May 1, 2020, entry for 3.5 hours/$1872.50 described as "Draft Complaint. Correspondence with Court" which Defendant objects to as "Block-billed." (Doc. 66-1 at 15.)  For the reasons

discussed above, the Court will not disallow entries solely on the basis that they are "block-billed." *See supra*. However, the Court must assess the reasonableness of the requested compensation.

The "Review documents" portion of the two March 20, 2020, entries does not satisfy *Tenafly's* specificity requirement. The Court cannot determine the reasonableness of the "Review . . . Amended Complaint" aspect of the entries in that the *initial* complaint in this case had not yet been filed and was not filed until April 30, 2020, i.e., more than a month after the entry regarding review of an "Amended Complaint." Because the Court cannot determine the reasonableness of the two March 20, 2020, entries, the value of these entries--$1,872.50 each for a total of $3,745.00--will be deducted from Plaintiff's requested fee award.

The May 1, 2020, entry for "Draft Complaint. Correspondence with Court" is not compensable because the Complaint was filed on April 30, 2020, i.e., the day *before* the "Draft Complaint" entry, and "Correspondence with Court" does not satisfy *Tenafly's* specificity standard. *See supra*. Therefore, the $1,872.50 value of this entry will be deducted from Plaintiff's requested fee award. Thus, the total deduction for the three entries to which Defendant objects on a "block-billed" basis $5,617.50,

**c. Fee Award Deductions**

Defendant does not argue, and the Court does not find, that the requested hourly rates are unreasonable (*see* Pl.'s Ex. A, Doc. 63-2). As calculated above, $3.793.50 will be deducted based on twenty entries to which Defendant objects on vagueness grounds

discussed above Section III(B)(2)(a), *see supra* p. 22; $309.00 will be deducted based on seven entries to which Defendant objects based on vagueness and local counsel grounds discussed in Section III(B)(2)(b)(ii) above, *see supra* p. 28; and $5,617.50 will be deducted based on three entries to which Defendant objects on block-billed or vague and block-billed grounds discussed above in Section III(B)(2)(b)(iii), *see supra* pp. 31. This results in a deduction of $9,900.00 from the $51,704.60 requested award. Therefore, the Court concludes Plaintiff is entitled to a fee award of $41,804.60.

## IV. CONCLUSION

Based on the foregoing analysis, the Court will grant Plaintiff's Motion for an Award of Attorney's Fees and Costs (Doc. 63) in part. The Court will award Plaintiff $41,804.60 in attorney's fees. The Court will also award Plaintiff $2,056.52 in taxable costs.[4] (*See* Doc. 63-1 at 15.) A separate Order will enter.

_____
Robert D. Mariani
United States District Judge

---

[4] Defendant does not make any specific argument as to the amount of the requested award for costs. (*See* Doc. 66.)